**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**CHRISTOPHER WEST**                                                                     **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 2:07CV215-P-A**

**DRURY COMPANY**                                                    **DEFENDANT**

## ORDER

This cause is before the Court on the defendant's Motion to Strike Plaintiff's Expert, Billy Seward [87]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

This lawsuit arose from an accident that occurred on January 4, 2006 while construction work was being performed at the Baptist Memorial Hospital in Southaven, Mississippi. On the date in question, the roofing subcontractor, Drury Company, was stacking and securing bundles of roof decking materials into loads to be lifted to the roof of the building by means of a tower crane. Plaintiff, an employee of the electrical subcontractor, sustained injuries when a bundle of styrofoam fell out of the load, fell from the top of the building and struck him on the head when he exited the building.

Drury Company challenges the admissibility of the testimony of plaintiff's liability expert, Billy Seward, pursuant to Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Phamaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993). Defendant asserts Seward lacks the qualifications to testify as to the specific opinions offered in this case: 1) defendant acted negligently in failing to properly load and secure the sytrofoam roof decking materials; 2) defendant acted

negligently in failing to properly secure the area where the crane was lifting the materials; and 3) weather had no impact on the accident. In addition to attacking Seward's qualifications, Drury Company also asserts plaintiff cannot offer sufficient indicia of relevance and reliability to warrant the admission of Seward's testimony at trial. West's response maintains that Seward's extensive experience in commercial and industrial construction are entirely sufficient to demonstrate his qualifications to provide expert testimony in the instant case. He likewise asserts the opinions proffered by Seward are both relevant and reliable and, consequently, admissible.

Rule 702 controls the admission of expert testimony in any given case. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702.

Simply put, FRE 702 is the vehicle by which a party offers evidence based on scientific, technical or other specialized knowledge through the testimony of a qualified expert. The party advancing the witness' testimony bears the burden of establishing both the expert's qualifications and the admissibility of the subject testimony. Mathis v. Exxon Corp., 302 F.3d 445, 460 (5th Cir. 2002) ("The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test.").

It is the duty of the trial judge to screen a proffered expert's testimony to determine admissibility. F.R.E. 104(a).[1] See also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 125 L.Ed.2d 469, 113 S. Ct. 2786 (1993).

As a first step, the Court should examine a witness's qualifications to determine whether he or she is, in fact, "qualified as an expert by knowledge, skill, experience, training, or education . . . ." F.R.E. 702. A trial judge should refuse to allow an expert witness to testify if the witness is not qualified to testify in a particular field or on a given subject. St. Martin v. Mobil Exploration & Producing U.S., Inc., 224 F.3d 402, 412 (5th Cir. 2000).

Assuming a witness is sufficiently qualified, the Court must evaluate the proposed testimony. In doing so, the Court seeks to ensure that the expert's testimony is not only relevant, but reliable as well. Watkins v. Telsmith, Inc., 121 F.3d 984, 989 (5th Cir. 1997). The requirement that expert testimony "assist the trier of fact to understand the evidence or determine a fact in issue" captures the relevancy inquiry." "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." Id. at 591. An expert's testimony is relevant where there is a sufficient relationship between the subject of the proffered testimony and the facts of the case, so that the testimony aids the factfinder in resolving a disputed issue. See Ruff v. Ensign-Bickford Indus., 171 F. Supp. 2d 1226, 1236 (D. Utah 2001); Employers Reinsurance Corp. V. Mid-Continent Casualty Co., 202 F. Supp.2d 1212, 1215 (D. Kan. 2002). In determining relevance, the Court considers whether "expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert v. Merrell Dow Pharmaceuticals,

---

[1] "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ." F.R.E. 104(a).

3

Inc., 509 U.S. 579, 591, 125 L.Ed.2d 469,113 S. Ct. 2786 (1993)(quoting from United States v. Downing, 753 F.2d 1224, 1242 (3rd Cir. 1985)). Furthermore, expert testimony on matters within the common knowledge of the jury does not assist the trier of fact and is thus inadmissible. See Peters v. Fire Star Marine Serv., 898 F.2d 448 (5th Cir. 1990).

Rule 702's reliability component requires consideration of whether the proposed testimony is "supported by appropriate validation–i.e., 'good grounds' based on what is known." Daubert, 509 U.S. at 590. Accordingly, expert testimony is admissible only when "1) the testimony is based on sufficient facts or data; 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702. The inquiry is both fact intensive and flexible. Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150, 143 L.Ed.2d 238, 119 S. Ct. 1167 (1999). See also Daubert, 509 U.S. at 594. The end objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kuhmo, 526 U.S. at 152.

With all the foregoing in mind, the Court shoulders its gate-keeping responsibility.

A.   Seward's Qualifications[2]

The Court first turns to the argument advanced by Drury Company that Seward lacks the necessary qualifications to testify in this case. Seward's expert disclosure and subsequent report reveal his extensive experience in commercial and industrial construction projects, both as an

---

[2] Defendant devoted a substantial portion of its brief to the argument that Seward is not an objective expert, noting his biological relationship as plaintiff's counsel's father and the fact that plaintiff's counsel provided legal representation to his father as well as his business on previous occasions. Those factors bear more on the witness's credibility than on the admissibility vel non of his testimony.

4

electrical contractor and as a general contractor. His experience extends to the safe operation of construction job sites. His expert report avers his familiarity "with the safety standards relevant to the work being performed" and

> with the requirements of safety on the job site involving subcontractors . . . including but not limited to conducting the safe tying down and securing of materials to be lifted into the air and the proper and safe creation of a safe zone, where an area on a job site is secured, to prevent any objects or materials, while being lifted into the air, from falling or coming loose and hitting a worker below.

Seward's Report at p. 1.

Defendant's challenge to Seward's qualifications details numerous alleged deficiencies in experience pertinent to the facts of the present case, e.g., Seward has never: been a safety foreman or safety engineer, performed any roofing or roof decking work, operated a crane or supervised a crane operator, secured a load of styrofoam onto a crane or supervised anyone who was doing so, lifted styrofoam using his suggested mesh netting or platform, or seen sheets of styrofoam roof decking fall. The Court rejects the notion that such fact specific knowledge and experience are essential to Seward demonstrating he possesses sufficient expertise to testify on the matters at issue in this case.[3][4] Accordingly, the Court concludes that Seward's forty-seven (47) years of experience in the construction industry demonstrate his ample qualifications to express the opinions articulated above.

---

[3] Certainly, there <u>are</u> instances in which the complexity of the case requires an expert to demonstrate that his experience, training and knowledge in a particular area render him <u>uniquely</u> qualified to express an opinion on the issues at hand. This, however, is <u>not</u> such a case.

[4] Having determined that Drury Company's argument concerning Seward's knowledge of the applicable safety standards pertains more to the reliability of Seward's testimony than his qualifications, the Court will address that matter <u>infra</u>.

5

B.  Relevance of Seward's Testimony

The next area of inquiry is that of relevance. Close scrutiny of Seward's proffered testimony leads the Court to conclude that it fails the relevancy test. Viewed in proper context, Seward's testimony can be summarized as follows: If the bundles were properly secured and/or tied down prior to the lift being started, the bundles would not have come loose and fallen and hit Christopher West <u>and</u> if the defendant had properly secured a safe zone below the area of the lift, the accident would not have happened. As articulated in subsection C. <u>infra</u>, Seward's testimony goes no further. Without more, Seward's conclusory testimony boils down to simple common sense. Because the proffered testimony falls within the common knowledge of the jury, Seward's testimony will neither "assist the trier of fact to understand the evidence or to determine a fact in issue." Accordingly, it is not admissible under F.R.E. 702.

C.  Reliability of Seward's Testimony

The final analysis under <u>Daubert</u> and Rule 702 turns on whether the expert's testimony is reliable. The primary focus of Drury Company's motion is on this element, and rightfully so. Defendant maintains that nothing in Seward's report and deposition demonstrates that his opinions are the product of reliable principles and methods, or that he applied such principles and methods reliably to the facts of the case.[5]

First and foremost, despite the fact that Seward attested to an extensive working knowledge of the applicable safety standards in the industry (a point this Court does not dispute), he failed to

---

[5] Plaintiff never attempts to rebut the specific deficiencies upon which defendant relies. Instead, his response merely urges the Court to exercise its discretion to "avoid unnecessary reliability proceedings in ordinary cases where the 'reliability' of an expert's methods is properly taken for granted." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152, 143 L.Ed.2d. 238, 119 S.Ct. 1167, 1176 (1999).

6

articulate the pertinent standards or their source in either his report or his deposition testimony. Although he referenced OSHA standards in his deposition, he could not identify a specific relevant standard. Furthermore, although he agreed to find and produce the applicable standard, he never did so. His failure in this regard raises serious concerns as to the foundation for his testimony.

With regard to the specific opinions Seward offers, the conclusory nature of his testimony is telling. His first opinion is to the effect that the January 4, 2006 accident occurred because Drury Company failed to properly load and secure the styrofoam. The sole support for his opinion is that the accident occurred: "[I]f the bundles were properly secured and/or tied down prior to the lift being started, the bundles would not have come loose and fallen and hit Christopher West." Neither his report nor his deposition testimony articulate any additional basis for his conclusion.[6][7][8] Seward Report at p. 2.

Seward's second opinion is that "Drury Company, by and through its supervisors and/or employees did not properly secure the area below the area in and around the hospital being built, to prevent any materials or objects that might fall during the lift, from hitting someone below." Seward Report at p. 2. Defendant asserts that this opinion is subject to exclusion because it is based

---

[6] Although Seward suggests alternative methods to lift the styrofoam, which he maintains would have prevented the accident, his report never articulates what was inappropriate about the method employed by Drury Company. Furthermore, he never tested the suggested alternative methods.

[7] Seward's report does aver that "Drury Company had an unqualified worker securing and tying down bundles, immediately prior to the accident." However, he articulates no facts in support of that conclusion.

[8] Plaintiff's counsel made an attempt to rehabilitate Seward during his deposition. However, his efforts fell short inasmuch as they Seward simply testified that the testimony of other witnesses and the documentary evidence merely "reinforced" his initial conclusions–not that he relief on them in reaching said conclusions.

7

on insufficient facts and data. In particular, Seward fails to account for his position that Drury Company, as the roofing subcontractor, was responsible for securing a safe fall zone despite evidence that defendant did not own or operate the crane and that under the terms of its contract it was not responsible for hoisting the roof decking materials to the roof or for securing the jobsite. And, as with his first opinion, Seward maintains that the accident itself is proof that Drury Company breached its duty to properly secure the area. Finally, Seward's opinion ignores evidence that the area beneath the crane <u>was</u> secured and that plaintiff's injury occurred when the styrofoam blew off the roof on the opposite side of the building.

Seward's last opinion is simply that weather had no impact on the accident. He offers this opinion despite the fact that he has no knowledge of whether there was a wind gust at the time of the accident. Seward admitted he was aware of signed statements from both the crane operator and a Drury Company employee that a gust of wind was responsible for the accident. Seward merely responded that if wind conditions were that bad, the lift should have been delayed. He offered no objective means for determining whether the wind conditions warranted a cessation of the work.

The Court has reviewed Seward's report and his deposition testimony in great detail and with an eye toward according Seward as much flexibility as possible in view of the fact that his opinions fall outside the spectrum of scientific or technical knowledge most often associated with <u>Daubert</u>. However, even viewed with the most liberal perspective, the Court is constrained to conclude that Seward's testimony is inadmissible. To quote from <u>Wal-Mart Stores, Inc. v. Qore, Inc.</u>:

> [Seward] has had multiple opportunities to reveal the methodology he used .... He has not revealed his method. [Seward's] expert report indicates he relied on his experience and industry standards. [Seward] certainly has construction experience, but he has not related the nexus between that experience and his conclusions.

8

> More concerning is [Seward's] failure to make mention of any industry standards during his testimony. Not once does [Seward] give the court the standard he applied. <u>Daubert's</u> gatekeeping function is specifically designed to keep standardless testimony out of evidence. [Seward] opines on a variety of subjects, but he offers no guide as to where his conclusions came from or how one might judge the value of those conclusions. Operating in a standardless world allows [Seward] to get on the stand and make any assertion he chooses without regard for the truth. There is no way to judge those who operate without bounds. It is unfair to put a jury in the position of having to try.

2009 WL 279096, *2 (N.D. Miss. 2009). In short, Seward's testimony is precisely the kind <u>Daubert</u> was intended to avoid. "[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146 (1997). The Court can, and does, "conclude that there is simply too great an analytical gap between the data and the opinion proffered." <u>Id.</u> Accordingly,

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendant's Motion to Strike Plaintiff's Expert, Billy Seward [87] is well-taken and should be, and hereby is, GRANTED.

SO ORDERED, this the 5th day of June, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE